CHRISTINA JONES v. EXECUTORS OF JACOB CREVELING DEC.

In debt for a legacy.

1. Where the sum given is repeated in the same writing, the legatee can take only one of the sums bequeathed; the latter sum is to be held a substitution; and they are not to be taken cumulatively, unless there be some evident intention, that they should be so considered. But the same sums payable at different times and upon different contingencies, are taken as accumulative or additional; so also where one sum is payable on a contingency, the other not.

2. A bequest in the following words: "I do give and bequeath unto my two grand daughters, Christina Jones and Deborah Jones, each four hundred dollars, to be paid to them by my Executors. If they are not of age at my decease, I order my executors to pay each of them, yearly and every

year, the interest of four hundred dollars, until they arrive of age.    I further order my executors to pay out of my estate to Christina Jones four hundred dollars, one year after my decease ; and to pay Deborah Jones four hundred dollars, two years after my decease, in full of their legacies bequeathed to them." Held that each legatee is entitled to eight hundred dollars.

*P. D. Vroom* for plaintiff.

*H. W Green* for defendants.

HORNBLOWER, C. J.    After a careful examination of the cases cited on the argument and of many others, I am satisfied, notwithstanding all the nice distinctions that have been taken by courts of law and equity, upon the subject of single or cumulative legacies, we must come down to the plain common sense question, of what was the intention of the testator.

This was the result to which Chief Justice Kent was brought, after his usual research, in the case of *Dewitt et ux.* v. *Yeates*, 10 *Johns. R.* 156.    After stating the general rule, " that where *the sum*, is repeated in the same writing, the legatee can only take one of the sums bequeathed, unless there be some evident intention to the contrary ; and then, it lays with the legatee to show that intention, and rebut the contrary presumption."    But where the two bequests are in *different* instruments, as by a will in the one case, and a codicil in the other, the presumption is in favor of the legatee, and the burden of contesting that presumption, is cast upon the executor : (he adds,) " The presumption either way, whether against the cumulation," as in the first instance ; " or in favor of it," as in the second ; " is liable to be controlled and repelled, *by internal evidence and the circumstances of the case."*

In another part of his opinion, Chief Justice Kent says : " Courts have required some new or additional cause for enlarging the bounty, before they have held it cumulative, unless the words of the will clearly showed *the intent."*

The civil law, it is true, although it puts the question entirely on the testator's *intention*, would not accumulate the legacies, without the clearest and strongest proof of the testator's intention to do so.    But the latter branch of this rule of the civil law, has not been adopted by the courts of equity in England.    On the contrary, slight circumstances have sometimes been laid hold of

as evidencing an intention to enlarge the bounty of the testator; where such enlargement was not inconsistent with any particular clause, or with the general scope and arrangement of the will. Accordingly, in *Ridges* v. *Morrisson*, 1 *Bro. C. C.* 389, where the testator, had by his will given N. L. five hundred pounds; and afterwards in codicil, gave him the same sum, the Lord Chancellor established both legacies; not because they had been given in different instruments; but because in the codicil, he had described him as N. L. " whom he had put an apprentice;" the Chancellor considering the testator as thereby indicating the legatee as an object of his peculiar favor.

Indeed, I am not sure that the presumption, *against* accumulation, when the bequests are in the same instrument; or in *favor* of accumulation, where they are in different instruments, does arise, unless, in the former case, they are for the same sum, or nearly so, and *in totidem verbis*, or only with a small difference: nor, in the latter case, unless there is some difference in the amount, or form of the bequest; or some indication in the codicil, of some fact or circumstance, operating as a reason for the testator's increasing his bounty. But I admit, if a testator should make two bequests, to the same person, for the same sum of money, payable out of the same fund, at the same time and upon the same contingency, without assigning any reason, or referring to any motive for such repetition of his bequests; the presumption of law would be, that only one legacy was intended, whether both bequests were in the same instrument, or one in the will and the other in a codicil.

Whenever we are about to apply a general rule to any given subject, we ought to bear in mind the reason and object of such rule. If we do not, we are in danger of giving it an influence it was never intended to have; and of applying it to cases not within the mischief it was designed to prevent. What then was the object of the rule, that raises a presumption against accumulation, where two pecuniary legacies are given in the same instrument? It certainly was not because the law has any repugnance to a testator's duplicating his bounty to any individual: it was simply to protect men's estates against the effects of accidents, unskilfulness or forgetfulness, in preparing their wills. Those instruments are frequently drawn, *in extremis*, and often

by incompetent hands; and sometimes executed without being carefully read over and examined by the testator. Mistakes may therefore occur, and legacies be unintentionally repeated, in the same, or in nearly the same language. All we have to do then, in the application of this rule, is to be satisfied, that the alleged repetition of a legacy; or the extension of a testator's bounty, in any given case, was not the effect of unskilfulness in the penman or of forgetfulness in the testator.

In my opinion therefore, it is in all cases a question of intention: and that intention, is to be sought for and collected from the language of the testator; the form and character of the bequests; the object of his bounty, and the whole scope, arrangement and structure of his will: or as Chief Justice Kent, expressed it, " from internal evidence and the circumstances of the case."

Upon these principles, I propose to examine the question now before us.

It appears by the state of the case, that Creveling, the testator, was worth more than thirty thousand dollars of real and personal estate. I do not mention this fact, as one that ought to have the slightest influence in forming our judgments as to the intentions of the testator. Whatever may have been his wealth, we have no right to measure out his bounty, or to say who ought to have been its favored objects. But it is a circumstance, in recollection of which, we may enter upon this investigation, with less fear of doing injustice to other parties in interest, than we should do, if the fund out of which the legacies are to come, was more restricted.

The testator had five sons and three daughters. To each of his sons and to one of his daughters, he gave a farm : or at least large and valuable portions of real estate, charging the lands devised with the payment of legacies. To another of his daughters, he gave a legacy of two thousand dollars : but, to his daughter Mrs. *Cooper*, the mother of the plaintiff, he gave only a life estate in a small tenement and lot of land, with remainder to his other children. The testator then proceeds to make provision for his grand daughters, the plaintiff and her sister Deborah, children of Mrs. Cooper, who were then minors, and whose father was dead. It is upon this part of the will the dispute arises;

and the language of the testator, when punctuated, as the order of it, seems to require, reads thus : " I do give and bequeath, unto my two grand daughters, Christina Jones and Deborah Jones, each, four hundred dollars, to be paid to them by my executors.   If they are not of age at my decease, I order my executors to pay each of them, yearly and every year, the interest of four hundred dollars, until they arrive of age."   Here then is a good and perfect bequest ; complete in all its parts ; given in plain and unequivocal terms, and susceptible of no doubt or uncertainty.   If they should be of age, at the testator's death, his executors were *then* to pay them four hundred dollars each.   If not then of age, his executors were to pay each of them yearly the interest of four hundred dollars, until they should come of age, at which time they were severally to receive the principal sums.   Having given these legacies, with special directions as to the manner of payment, and the contingencies upon which they were to be paid, the testator proceeds : " I *further* order," (thereby manifesting a perfect recollection of what he had just been doing,) " my executors to pay *out of my estate*, to Christina Jones, four hundred dollars, one year after my decease ; and to pay Deborah Jones, four hundred dollars, in two years after my decease, in full of *their legacies* bequeathed to them."

Here again, in plain and appropriate terms, and by way of "*further*" provision for his grand daughters, (the result perhaps of further reflection upon the claims they had upon his bounty,) the testator, *orders* his executors to pay, *out · of his estate*, to Christina Jones, (not, *the said* legacy ; nor *the said* four hundred dollars, but) four hundred dollars, one year after his decease ; and the like sum to Deborah, two years after his decease ; and then adds, " in full of *their legacies* bequeathed to them."

Now, I suppose, if the testator had said, " I give and bequeath to my grand daughters, C. and D. eight hundred dollars, each ; four hundred dollars to be paid to C. in one year after my decease ; and four hundred dollars to be paid to D. in two years after my decease ; and the other four hundred dollars to be paid to each of them at my decease : but if they are not then of age, I *order* my executors to pay them each the interest, annually of four hundred dollars, until they arrive of age ; " there could have been no doubt, but that each of the legatees would have been

entitled to eight hundred dollars; and yet, it seems to me, that the testator has done, and intended to do, the same thing, only in a different form of words.

Nay it seems to me, if the testator really intended to give them eight hundred dollars apiece; one half to each of them at their full age, and the other half at certain periods after his death, he could not have expressed that intention in any better and more specific manner, than he has done. And who shall say that such was not his intention?

There is nothing startling in the idea, that he should give these infant and half orphaned grand daughters, eight hundred dollars each; they represented one of his *sons*, and he had given their mother nothing that could descend to them : nor is there anything extraordinary in the fact, that he should direct one half of his bounty, not to be paid to them until they should come of age, and that the other half should be paid to them at certain periods after his death.

Again, the arrangement and structure of a will, is a very proper subject of *consideration*, (or, as Lord Hardwicke expresses it, in *Duke of St. Albans* v. *Beauclerk et al.* in 2 *Atk.* 639,) " the frame of the will is considerable," and often furnishes important aid in reaching the true *intention of the testator*; and from the orderly and systematic manner in which the provisions of this will ·are arranged, in reference to the different members of his family, and especially, from the detailed and specific directions, and the appropriate language employed, in the bequests made to these children, upon the supposition, that he intended to give them eight hundred dollars, each, I am strongly impressed with the belief, that such was his *intention*, and that this apparently double gift, was not the result of unskillfulness, or of misprision : or of any confusion of ideas, or vacillation in the mind of the testator : but, that he perfectly understood himself, and meant just what he has written. On the contrary, if we suppose the testator intended to give the legatees only four hundred dollars each, we impute to him the use of awkward and inappropriate language, and render that confused and ambiguous, which, as it was written by the testator, or by his directions, is, like all the other parts of the will, plain, intelligible and appropriate.

Again, if we restrict the bequest to the sum of four hundred

dollars, we must entirely reject the first bequest, and consider the second direction given to the executors, as a substitution for the first. But it seems incredible, that any one, whether it was the testator or his scrivener, who was capable of writing so orderly and well arranged a will as this is, and of using as correct and appropriate language, as is employed in every other part of it : if the testator had simply changed his mind after the first clause had been written, as to the times and manner of payment, should not have indicated that change, by using the words "instead of;" or by saying, "the said legacies;" or "*the said*" four hundred dollars. Instead of doing so, and as if for the very purpose of showing, that he did not intend to abrogate, or in any manner explain or qualify what he had already done, but to indicate that he was about to do something more, the testator says, (just as any other man of good common sense would say, if such was his intention,) "I *further* order my executors &c." He had just before given his executors one *order :* he had *ordered* them in the preceding clause, if the children should not be of age, to pay them interest until they came of age : he now, "*further*" orders them to pay "out of his estate" certain sums of money upon entirely different contingencies and in a different manner.

In the first clause of his bequests to these children, the testator is minute, specific and almost technical in his directions. They were evidently the result of forecast and reflection. Having finished that clause, did he suddenly change his mind, simply, as to the time of payment : or upon more reflection, did he determine to increase his bounty to these children ? If the former, he has signally failed to mark that change of mind ; if the latter, he has in very terms and in a natural way, fully carried out his purpose.

It is true, the word "further" is not a word of strict legal, or technical import. It may be used to introduce a negation or qualification of some precedent matter : but generally when used as an adverb, as it is in this place, our Lexicographers, (Webster, Walker and others,) inform us, it is a word of comparison, that it means "additional;" and is equivalent to "moreover" or "furthermore," "something beyond what has been said," or "likewise" or "also." In this sense it is frequently used in statutes and legal instruments. So when I say, "I further

covenant," I do not abrogate the preceding covenant, nor in any way qualify it: on the contrary, the word "further," or any of the terms equivalent to it, instead of a revocation, amounts to a re-affirmance of all that precedes it. But the clause under consideration has no reference to any thing that has gone before, except so far, as the word "further" implies and connects it with, some preceding matter.

If these two clauses, in the precise words, in which they now stand, had occurred in different and remote parts of this will, which is somewhat protracted, there might have been a doubt, whether it had not been the result of accident or forgetfulness; or whether the testator had not by the latter clause, intended a revocation of the first. Even then I should not think so; but should rather attribute the additional bequest, to the fact, that a better spirit had come over the testator's mind, inclining him to more liberality towards these orphans. There is however, in this case, no room to attribute the second clause to accident, or forgetfulness. The juxtaposition in which they stand and the connecting word "further" precludes the supposition.

But there are other reasons that strongly influence my mind. The two bequests, though for similar sums, are charged on different funds; payable on different events and contingencies: one with interest in a certain event; the other without interest in any event: one might be payable on the death of the testator; the other could not be payable until one year after his death; and consequently the two legacies, though in amount, nominally the same, were of different values.

I have said, they were chargeable to different funds. This is certainly so. The first was a legacy simply, and as such would have been payable out of the personal estate only, if the testator had not charged his devisees with the payment of legacies. But the second bequest, is ordered to be paid out of *his estate*, and was a charge therefore, as well upon the personal as the real estate.

As to the other diversities between the two bequests; they are material ones and the testator may have had his reasons for making them. If these legacies in the different forms, and terms in which they are expressed, had been given, one in a will and the other in a codicil, they would certainly have both stood, unless

there had been something in the codicil to show a contrary intention : and if the fact of their both being in the will, exposes them to the legal presumption against accumulation, I think that presumption is overcome by the manifest intention of the testator.

There is no law, that prohibits a man from giving two or more pecuniary legacies to the same person, either upon the same or upon different contingencies : but there is a law, or a rule of construction, which is the same thing, that requires us to give effect to every clause and word of a will, if we can do so, consistently with the principles of law, and without contradicting the manifest intent of the testator. It is therefore a pure question of intention. I cannot find upon the face of this will, nor in the circumstances of the case, any evidence that the testator did not intend to give the plaintiff both sums : and if one of them is rejected, it must be merely by force of the rule, that raises a presumption against accumulation, where the legacies are in the same instrument. But I can find no case in which one legacy has been rejected simply under the operation of that rule, when the legacies, as in this case, have been charged on different funds, payable at different times and on different contingencies : one with interest, until a certain event and another without interest in any event.

In *Garth* v. *Meyrick*, 1 *Bro. C. C.* 30, the testator gave the legatee one thousand pounds " South Sea annuities to be transferred into her own name," and in a subsequent part of the will, he repeated : " I give to (the legatee) one thousand pounds, South Sea annuities, *as aforesaid*, or as I have already done." Here was a mere repetition of the same gift in the same words, and to be executed in the same manner ; that is, " to be transferred into her own name :" and one of them was properly rejected. So too in *Greenwood* v. *Greenwood*, (in a note to the last case,) the testator gave Mary Cook, five hundred pounds. Afterwards, in the same will he said, " I give M. Cook, five hundred pounds, for her own use and disposing notwithstanding coverture." It was held to be but one legacy, and in my opinion, rightly so ; for it was evidently the same gift, repeated only for the purpose of adding the restrictive words. But in *Hooley* v. *Hutton*, (in note to 1 *Bro. C. C.* 391,) Mr. Justice Aston, (whose argument is said, in *Ridges* v. *Morrisson*, to contain the whole doctrine of the

law upon the subject) concludes by saying, " the law seems to be, and the authorities only go to prove the legacy *not* to be double, where it is given, for the *same cause*, in the *same act*, and *totidem verbis*, or only with a small difference." In the case before us, these apparent double legacies, though given in one act, for the same amount, and probably for the same cause; that is, because they were his grand children, so far from being *in totidem verbis*, or with small difference, are in entirely different language and evidently intended to confer different benefits, and of different values, because depending on different contingencies.

In *Holford* v. *Wood*, 4 *Ves.* 74, the testatrix gave several annuities and legacies, all payable out of a *particular fund*. Among them, she gave T. N. an annuity of thirty pounds *for life*, payable quarterly and fixed the first day of payment. In a subsequent part of the will, and after making a number of other bequests, she repeats as follows, "I give to T. N., the Butler, thirty pounds a year, *for his life*." Only one legacy was allowed, and I think rightly so, upon the principles laid down by Mr. Justice Aston. It was not only in the same act, but for the same sum and out of the same fund. The only difference was, that in the first instance the testatrix had directed the time of payment, and in the second she had not. But had the second gift, been charged upon a different fund and made payable in a different manner, such I think would not have been the decision ; and more especially if the two gifts had stood in immediate connection with each other and had been joined together, as these are, by the word " further."

But much stress has been laid on the words, " in full of *their legacies* bequeathed to them," and they are supposed to make the *intention* of the testator, to give each of the legatees, but one of the sums mentioned. If I was disposed to criticise those words, I should say the pronoun " their " stands for the names of the legatees : written in full therefore, the sentence would read, " *in full of the legacies bequeathed to Catharine, and of the legacies bequeathed to Deborah :*" for there are no legacies bequeathed to *them :* there are, either two legacies given to each ; or only one to each. But not to rely on a mere criticism, I remark, that they are mere words of course : thrown in to finish the clause ; a sort of suffix, neither adding to, nor restraining

the preceding matter. In a previous part of the will the testator had used the same expression and in the same useless and unmeaning manner. After giving his daughter A. W. a legacy of two thousand dollars, he adds, " to be paid out of my estate, *in full of her legacy."* In both instances these words only express what would have been true without them, if the executors had paid the legacies.

But by what rule of construction are we to confine the application of those words exclusively to the last mentioned sums ?

Connected by the word " further " as the two clauses are, the words, " in full of their legacies," are as applicable to all the moneys directed to be paid, as they are to the two last sums. If by construing those words into a limitation of the testator's bounty, to the sum of four hundred dollars each, we should effectuate a clear intention of the testator, collected from other parts of the will, we ought to do so. But I cannot consent to make words so unimportant in themselves, and used so unmeaningly in another part of the same will, the ground upon which to build up, *an intention,* or, to consider them as a key, by which to find out an intention, not only, not indicated by any other part of the will, but as it seems to me, contrary to the plainly expressed meaning of the testator.

To adopt the defendant's construction, we must expunge, transpose or interpolate material words : to sustain the plaintiffs, we leave the will as it is.

I conclude with one additional remark. It is this : the case before us ought not to be discussed as if here were two distinct and independent bequests in different and remote parts of the will : nor, as if the same bequest was repeated in the same words in immediate succession. It is not like either of those cases. It is not in my opinion, a case of double legacies, such as involves the doctrine of cumulative or single legacies. It is but one bequest : or speaking more accurately, it is one *continued and entire* provision, for one branch of the testator's family. It forms one section or division of his will, devoted to an expression of his regard for these grand children, in the same manner in which he has made provision for his other children, by separate items or sections of his will. The two clauses therefore, ought to be considered together ; and not sundered, for the purpose of letting

in any presumption against double legacies.   This view of the case satisfies my mind independent of all other considerations.

Knowing that I had the misfortune of differing from two of my brethren, I have felt it my duty to assign my reasons some-what at large for the opinion I have formed in this case ; and that must be my apology for the time I have occupied.   My opinion, is that the plaintiff ought to have judgment for eight hundred dollars, with interest on four hundred dollars from the death of the testator, and interest on the other four hundred dollars, from one year after his death, with costs.

WHITE, J., concurred.

NEVIUS, J.   The plaintiff is the grand daughter of the defendants' testator, and has brought this action for a legacy bequeathed to her by his last will and testament.   Under this will she claims to be entitled to eight hundred dollars with interest, whilst the defendants insist, that the testator bequeathed to her only the sum of four hundred dollars.   The only question is, whether it is a single or a double legacy of four hundred dollars. The eighth clause of the will which gives rise to this question is in these words :

" I do give and bequeath unto my two grand daughters Christina Jones and Deborah Jones each four hundred dollars to be paid to them by my executors ; if they are not of age at my decease, I order my executors to pay each of them yearly and every year the interest of four hundred dollars until they arrive of age, I further order my executors to pay out of my estate to Christina Jones four hundred dollars one year after my decease, and to pay Deborah Jones four hundred dollars two years after my decease, in full of their legacies bequeathed to them."

In construing this clause of the will, but little aid is to be derived from other parts of the same instrument, nor shall we be much enlightened as to the testator's intent, by reference either to general principles of construction, or to adjudged cases, for the latter depend ordinarily on their own peculiar circumstances. The intention of the testator is the governing principle and this is to prevail however obscurely expressed, if it can he ascertained with reasonable certainty.   To determine the testator's meaning, we are in the first place to be confined to the particular paragraph containing the bequest, and to give to every part of it

that construction which its language in ordinary acceptation imports. If by doing this we still fail in removing all uncertainty and doubt, we may reject inconsistent and contrary words or supply others in aid of the apparent intent to be collected from the whole context. If the intent still remains doubtful, we may resort to expressions in other parts of the will to discover it, or even to the circumstances of the testator, or the condition of his estate, or the situation of the legatee, to remove such doubt. Without referring to other rules of construction therefore, as I deem it unnecessary to do so in the present case, I will apply those I have suggested, as I believe them amply sufficient to remove all doubt as to the true meaning of the bequest contained in the clause above stated.

This will is dated in March, 1833, and the testator died in May following, leaving a large real estate which he devised in several parts to his five sons, and charged them each with the payment of one hundred dollars yearly till his debts and legacies were paid. His grand daughters named in the clause above cited were the children of his daughter who was still living at the date of his will and to whom he also bequeathed a legacy. Christina the plaintiff, was eighteen years of age when this will was executed, and her sister Deborah about thirteen. His personal property amounted to upwards of five thousand five hundred dollars at his decease.

In all his bequests preceding as well as succeeding the one in question, he uses the words, " I give and bequeath," or " I give and devise." Here he uses the same words in reference to the first sum of four hundred dollars, " I give and bequeath to my grand daughters each four hundred dollars, to be paid by my executors." Here is a clear and distinct bequest to each of his grand daughters of four hundred dollars, and if nothing more had been said, these legacies by law would have been payable in one year after his decease *to the legatees*, if they had attained their majority, or to their guardian, if they had not. But as they were minors at the date of his will, he means to provide for their support from the instant of his death, in case they should still be minors at his death, he therefore proceeds to give directions to his executors, as to the time and mode of paying this legacy. " If they are not of age at my decease, I *order* my ex-

ecutors to pay each of them the interest of four hundred dollars yearly, until they arrive of age." He does not, in direct terms say, that the interest of *the four hundred dollars* already bequeathed them shall be paid to them, yet no one can doubt that to be his intention. Thus far he has made the bequest, and in express terms provided for the payment of the interest from the time of his death in the event of the legatees being minors at his death, and by clear implication for the payment of the principal when they attain the age of majority. But he might live till they had respectively attained their majority and passed that period which called for his support, and therefore he has some further directions to give as to the time in which, in that event, the principal sum is to be paid, and accordingly he *further orders* his executors to pay to Christina, " four hundred dollars," one year after his decease, and to Deborah, " four hundred dollars," two years after his death. The words " four hundred dollars," are here used in the same way as in the paragraph immediately preceding, that is without the definite article " *the* " or any other word to indicate that he was referring to the " four hundred dollars " first mentioned. Now if the four hundred dollars mentioned in the second paragraph of this clause of the will, is the same that is mentioned in the first, and no one I think can doubt it: then, for the same reason, we may conclude, that the sum mentioned in the last paragraph, is also the sum intended by the first. By supplying the words " if they shall be of age at my death," which we may do to aid the apparent intent of the testator and without violating any rule of construction, all difficulty at once vanishes. The testator gives his grand daughters four hundred dollars each, and if they are minors at his death, he orders his executors to pay them the interest till they arrive of age, but if they shall be of age at his death he orders this legacy to be paid in one and two years after his death. This in my opinion, is the most manifest and intelligible construction that can be given to this part of the will, and it derives, I apprehend, conclusive support from the concluding paragraph. It would seem that the testator perceiving that a difficulty might arise from the repetition of this sum of four hundred dollars, goes on to obviate it, by declaring that the payment of the last sum of four hundred dollars to his grand daughters shall be in

full of their legacies bequeathed to them.   If he had intended to give them eight hundred dollars each, he would not have directed that the payment of four hundred dollars should be in full satisfaction of that legacy.   I cannot entertain a doubt, but that the true intention of the testator and the plain and legal construction of this clause of his will is, that the plaintiff should take only a single legacy of four hundred dollars, and am of opinion, that judgment for that sum, with the interest that has accrued upon it since the testator's death, (if the same has not already been paid by the executors,) should be entered for her.

WHITEHEAD, J., concurred.

ELMER, J.   I did not hear the argument of Counsel in this cause : but the Judges who did hear the argument, being eqally divided in opinion, and that being made known to the Counsel of the respective parties, they expressed, in the morning of yesterday, a wish that I should confer with the other members of the Court, and make up an opinion upon the matters in controversy. I have done so, heard the matter debated by them, and have come to the conclusion, that the construction given to the bequest under consideration in the opinion delivered by the Chief Justice, is the correct construction.

The question in this cause arises upon the construction to be given, to the bequest in the will of Jacob Creveling deceased, in the following words : " I do give and bequeath unto my two grand daughters, Christina Jones and Deborah Jones, each four hundred dollars to be paid to them by my executors.   If they are not of age at my decease, I order my executors to pay each of them, yearly and every year the interest of four hundred dollars, until they arrive of age.   I further order my executors to pay out of my estate to Christina Jones four hundred dollars one year after my decease ; and to pay Deborah Jones four hundred dollars two years after my decease, in full of their legacies bequeathed to them."

This suit is instituted by Christina Jones, who is now of age, for her legacy, and the question is, whether she be entitled to recover four hundred dollars, or eight hundred dollars, with a proper allowance of interest, whether it be a double legacy, or a single legacy, whether the latter sum of four hundred dollars, be

a cumulative and additional legacy, or whether it be a substitution for the former.

This is a case of two sums of like amount, bequeathed to the same persons, not by different instruments, nor by different parts or sections of the same will, but a case where both sums are given in the same section of the will. There seems to be no dispute about the principle, which is to govern the Court, in the construction of the bequest under consideration, namely, the *intent of the testator*, to be collected from the will itself, and the circumstances of the case.

Where the sum is repeated in the same writing, the legatee can take only one of the sums bequeathed—the latter sum is to be held a substitution, and they are not to be taken cumulatively, unless there be some evident intention that they should be so considered : but the same sums payable at different times, and upon different contingencies, are taken as accumulative or additional ; and the same, where one sum is payable on a contingency, the other not.

In the present case, the testator gives to Christina Jones and Deborah Jones, four hundred dollars each, to be paid to them by his executors. If not of age at his decease, he orders his executors to pay each of them yearly and every year, the interest of four hundred dollars, until they arrive of age. Christina the plaintiff was about eighteen years old when her grandfather died. Deborah not so old. By this bequest they were each entitled to four hundred dollars, when they respectively arrived *of age*, and interest thereon from the time of the testator's death. Payment of the principal sum could not be demanded until they respectively arrived of age. The interest thereof was payable annually from the death of the testator. But the testator intends to give them something more, because he *further* directs his executors to pay *out of his estate*, to Christina Jones four hundred dollars one year after his decease, and to Deborah Jones four hundred dollars two years after his decease, in full &c. These latter sums are to be paid, at a *different* time from the former, and upon a *different* contingency ; one of them is to be paid to Christina one year after the testator's decease, whether she was of age or not; the other to be paid to Deborah in two years after his decease, whether she was of age or not, and

without any allowance of interest. The testator must have had some object in view in the latter clause. It was certainly not necessary to secure to his grand daughters the previous legacy of four hundred dollars each, that was complete without any additional instructions to his executors. And it seems incredible, to me at least, that he should, so suddenly and before the completion of that section of the will, have changed his mind with regard to the time and mode of payment of the four hundred dollars first mentioned, and intended to set aside the first altogether and substitute the latter. If he had intended to substitute the latter, for the former, would he not have stricken out the former altogether? It appears rather to me, that he concluded four hundred dollars each, was not a proper portion of his estate for them, therefore he would increase their legacies, and add four hundred dollars more to the sum already given, and make the last sum payable at an earlier period. I conclude therefore, the latter sum is to be considered accumulative, and the plaintiff is consequently entitled to demand and receive, eight hundred dollars, with the proper amount of interest to be added. This opinion is formed suddenly, at the solicitation of counsel, without having heard their arguments, or time and opportunity to consult authorities. But if the party against whom judgment is rendered be dissatisfied, he will have an immediate opportunity of having the matter reviewed.

*Judgment for plaintiff for eight hundred dollars, with interest.*

